Metcalf, J.
By the common law of England, and until the St. of 4 & 5 Wm. 4, c. 76, illegitimate children, as a general rule, had their settlement where they were bom. Rex v. Inhabitants of Astley, Cald. 559; 1 Bl. Com. 459; Gambier on Parochial Settlements, 107 -109. By the same law, legitimate children have a settlement in the place of their birth, if neither of their parents has a settlement elsewhere. 1 Bl. Com. 362. We have not been able to ascertain, to our entire satisfaction, whether this was ever the law of Massachusetts. *76 Mr. Dane and Mr. Leavitt supposed that it was. 2 Dane Ab. 408; Leavitt’s Summary, 5, 9, 32. And the St. of 1789, c. 14, § 1, has a strong implication that a settlement might have been previously obtained by birth. But however this may have been, it is certain that, by the construction given to the provincial St. 7 Geo. 3, c. 3, § 4, (Anc. Chart. 663,) published in March, 1767, no settlement could be gained here, by birth, after April 10th in that year. So Parsons, C. J., said, in Chelsea v. Malden, 4 Mass. 135, and in Granby v. Amherst, 7 Mass. 3; and so the court have since repeatedly held. Andover v. Canton, 13 Mass. 550; Newton v. Braintree, 14 Mass. 382; North Bridgewater v. East Bridgewater, 13 Pick. 303.
The first express statute provision concerning the settlement of illegitimate children is found in St. 1789, c. 14, § 3, which declared that they should “ be deemed and taken to be inhabitants with the mother,” until they should gain a settlement in some other town or district. By § 1 of this statute, it was declared that all citizens of the commonwealth, who, before the 10th of April, 1767, resided in any town or district in Massachusetts for the space of one year, without being warned to depart, should be deemed and taken to be inhabitants of the same town or district. Under this provision, none but adult persons, whether born in lawful wedlock or otherwise, acquired a settlement. Somerset v. Dighton, 12 Mass. 383.
In the next statute on this subject, (St. 1793, c. 34, reenacted by the Rev. Sts. c. 45,) which repealed the St. of 1789, it was provided that illegitimate children should follow and have the settlement of their mother at the time of then birth, if any she should then have in the commonwealth. And it was in this statute that it was first enacted, in express terms, that neither legitimate nor illegitimate children should gain a settlement, by birth, in the places where they might be born, if neither of their parents should then have a settlement there.
Under the St. of 1789, it was decided that if the mother gained a new settlement, her illegitimate child’s settlement followed hers. Petersham v. Dana, 12 Mass. 429; and Newton v. Braintree, and North Bridgewater v. East Bridgewater, before cited. But under St. 1793, it is held that such child *77 retains his settlement where his mother’s was when he was bom, until he acquires a new one of his own, although his mother’s settlement be changed. Boylston v. Princeton, 13 Mass. 381.
The child, on whose settlement the present case must turn, was born in 1781; and the precise question, which has been raised and argued, is this: Where is the settlement of illegitimate children, who were born after April 10th, 1767, and before the passing of the St. of 1789, c. 14? If this question were new, it might perplex us. But it has been decided, in two of the cases already referred to, that the original settlement of such children is in the place where their mother’s was when they were bom, if she then had any. Petersham v. Dana, and North Bridgewater v. East Bridgewater. And the same has been decided respecting the settlement of an illegitimate child born before April 10th, 1767. Newton v. Braintree, cited above. Upon examination of these cases, in connexion with others, we cannot find any uniform single ground upon which they were decided. Indeed, we are convinced that they were not all decided on the same ground. But it seems to us that they all must have been decided upon one or the other of three hypotheses. Either first, that the English common law, above stated, was in force here till 1767, and that St. 1789, § 3, operated retrospectively, and conferred the mother’s settlement, if she had any, upon all illegitimate children who were born before that statute was passed, except those who, by § 1, were declared to have acquired a settlement by residence, &c.: Or, second, that by the common law of Massachusetts, illegitimate children took the settlement of their mother at the time of their birth, if she then had any: Or, third, that if such children had then: settlement at the place of their birth, as in England, until the year 1767, then, after such settlement was abrogated in that year, the court for the first time held, without any statute provision to that effect, that they took the settlement of their mother; and that this doctrine was confirmed by St. 1789.
In Petersham v. Dana, it was said that, as the child’s mother, “ at the time of his birth ” (1775,) “ had a lawful settlement in *78 Framingham, so, by the express words of the statute of 1789, c. 14, had he.” If so, then it would seem that it must have been because that statute, which was passed fourteen years after the child’s birth, had a retrospective operation, and conferred the mother’s settlement on him, if he had none before, or if he had one before at a different place from that of liis mother. And so that case has sometimes been understood. But Mr. Dane says, “ many lawyers have thought this act ” (St. 1789, c. 14,) “ did not respect any child born before it was passed.” 2 Dane Ab. 410.
In Newton v. Braintree, it was said, that “ under ” (probably meaning after) “ the provincial act of 7 Geo. 3, c. 3, [1767] illegitimate children had the settlement of their mother.” See also Leavitt’s Summary, 21, 32; 2 Dane Ab. 412. But how did they acquire her settlement ? Certainly not by force of that statute itself; for it was silent on this point. They might, however, have acquired it by force of St. 1789, if that statute was retrospective. But where was their settlement between 1767 and 1789? And if they took their mother’s settlement by force of St. 1789, why did not those take it, who were born before 1767, as well as those who were born after-wards ; and what effect had the statute of 1767 on their settlement?
In Somerset v. Dighton, there are remarks which strongly imply that the St. of 1789 was not retrospective in its operation. And it was also there said, that as the female child, whose settlement was in question, was “ born in the town of Dighton, where her mother had her settlement, in the year 1747, she thereby, as the law then was, gained a settlement in that town.” It is not quite plain whether “ thereby,” in this passage, means that the child gained a settlement by birth or by parentage. Either meaning, however, excludes the retrospective operation of St. 1789 ; for the child’s settlement was put" upon the law as it was asserted to have been forty-two years before that statute was passed.
If the St. of 1789 operated retrospectively, we can discern no reason why it should not affect the settlement of children bom as early as 1747, as well as of those who were born after *79 1767 ; nor why the decision in Newton v. Braintree, if made on the ground that this statute had a retrospective operation, was not as well warranted as the decisions in Petersham v. Dama, and North Bridgewater v. East Bridgewater.
On whatever ground the foregoing decisions, or any of them, were made, or might have been made, we have the satisfaction to find that the decisions themselves are clear, consistent, and uniform; to wit, that illegitimate children, born before 1789, originally have their mother’s settlement. And we are bound by those decisions.
As the child, on whose settlement this case depends, namely the grandfather of the pauper, was born in 1781, and as his mother’s settlement was then in Swanzey, so also was his, until he should gain a new one elsewhere. It does not appear that the mother afterwards gained a settlement in Rhode Island. But if she did, the case would not be varied; as has been often decided. And as it is not shown that either the grandfather or the father of the pauper, or the pauper himself, ever acquired a new settlement, the settlement of the latter is still in Swanzey. Exceptions overruled.